Lang-Kidde Company, Inc., Appellant, et al., *v.*
Keystone Leather Company, Appellant, et al.

Argued January 12, 1937. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

530

*Benjamin O. Frick,* with him *Ralph B. Evans,* for appellant in No. 327 and for appellee in No. 337.

*C. Brewster Rhoads,* with him *Laurence H. Eldredge,* of *Montgomery & McCracken,* for appellee in No. 327 and for appellant in No. 337.

OPINION BY MR. JUSTICE STERN, March 22, 1937:

In order successfully to maintain its bill in equity against defendant Keystone Leather Company it was incumbent upon plaintiff[1] to establish a duty on the part of that company to account. In our opinion plaintiff has failed in this requirement.

Volmer H. Houlberg was the owner of the entire capital stock of Volmer H. Houlberg, Inc. and one-half of the outstanding capital stock of Reptile Tanning Company, Inc.; he was also the sole owner of a business conducted under the name of American Morocco Company. Neither Volmer H. Houlberg, Inc. nor American Morocco Company had any substantial physical assets, but

---

[1] The term "plaintiff" herein refers to Lang-Kidde Company, Inc. At a late stage of the proceedings Walter Kidde intervened as a party plaintiff but his claim has been abandoned on appeal.

Reptile Tanning Company, Inc. owned large quantities of skins—raw stock, stock in process, and finished material—used in the manufacture of women's shoes.

While not insolvent in the sense of liabilities exceeding assets, these companies were not liquid. On July 26, 1928, a written agreement was entered into between Houlberg and Keystone Leather Company, and it is this document which is the basis of the present controversy. Prepared by laymen, it contains ambiguous phraseology, and attempts to formulate a plan which either was obscure in the minds of the parties or not adequately expressed by the scriveners. It provided that Keystone Leather Company was to form a corporation to be known as Keystone Reptile Tanning Company (subsequently incorporated as Keystone Reptile Tanners, Inc. and co-defendant with Keystone Leather Company in the present proceedings), with an authorized capital stock of $500,000, of which Keystone Leather Company agreed to subscribe $100,000. Houlberg was to assign the assets of Volmer H. Houlberg, Inc. and American Morocco Company and his "equity" in Reptile Tanning Company, Inc.[2] to the new corporation "for liquidation and operation." There was to be an appraisal of merchandise, plant and equipment. If, upon liquidation, the assigned assets realized more than $100,000, the excess was to be paid to Houlberg; if less, he was to make up the balance necessary to complete his stock subscription in that amount. Keystone Reptile Tanning Company was "to utilize the liquidated assets of his (Houlberg's) companies and equity to first pay the bank loans and bills receivable and other outstanding liabilities." It was "agreed by Houlberg that the selling, accounting, and all business operations of the new Keystone Reptile

---

[2] Reptile Tanning Company, Inc. and the interests owning the other half of its capital stock entered into a supporting agreement with Keystone Leather Company under date of August 8, 1928, providing for the turning over to the new company of all the assets of Reptile Tanning Company, Inc.

Tanning Company shall be under the direction of the Keystone Leather Company at such place and through such channels or methods they may direct." Houlberg was to be the president of the new corporation; two officers of Keystone Leather Company were to be vice-president and treasurer respectively.

In accordance with the agreement Keystone Reptile Tanners, Inc. was organized and the assets of the three companies were turned over to it. Active liquidating operations were conducted during a period of about one and a half years. At the same time the new company carried on a general business of importing, tanning and selling reptile skins, but the proceeds from the assets assigned for liquidation were segregated, and, after being deposited in the account of Keystone Reptile Tanners, Inc., were forwarded through Reptile Tanning Company, Inc. to Irving Trust Company in New York for deposit and distribution.

Plaintiff, a creditor of Volmer H. Houlberg, Inc., brought the present bill in equity against Keystone Leather Company and Keystone Reptile Tanners, Inc. on the theory that both these companies were obligated to account for the results of the liquidation. The court below ordered such an accounting. An account was filed under the caption "Final account of Keystone Leather Company Liquidating Agent for Reptile Tanning Company." Plaintiff objecting to certain items, an auditor was appointed, testimony heard, his report submitted, exceptions argued, and a final decree entered by the court surcharging Keystone Leather Company in the sum of $41,701.20. From that decree two appeals were taken, one by Keystone Leather Company on the ground that it owed no duty to account to plaintiff,[3] and the other by plaintiff from the court's decision in regard to two transactions as to which plaintiff unsuccessfully sought to establish a surcharge.

---

[3] Defendant Keystone Reptile Tanners, Inc. did not appeal.

Is there any liability of Keystone Leather Company to account? By the agreement of July 26, 1928, it assumed no obligation of any kind, except to subscribe to the capital stock of the corporation to be formed, and meanwhile to finance purchases of raw stock. It was Keystone Reptile Tanners, Inc. which was to "liquidate" and "operate," and it was that company to which the assets were to be, and in fact were, assigned. It is true that *Houlberg* agreed that the "selling, accounting and all business operations" of the new company were to be "under the direction of the Keystone Leather Company," but the purpose and meaning of this provision seem obvious. The capital stock of Keystone Reptile Tanners, Inc., was to be owned equally by Houlberg and Keystone Leather Company, but the latter stipulated for control as to the business management, and Houlberg conceded it. Certainly such an arrangement does not make the controlling stockholder liable for the acts and obligations of the corporation. If Keystone Leather Company shaped policies and directed operations of the liquidation and of the new business generally, it was only on behalf of the liquidating corporation. In its own right it neither obtained title nor received possession of the assets. In some of its correspondence, as well as in the account filed, it designated itself "Liquidating Agent," but an ill-chosen and ambiguous term used by business men little versed in legal nomenclature should not be regarded as determinative of a status dependent upon the provisions of a written contract and the action of the parties thereunder. It has already been pointed out that all of the proceeds of the liquidation were received and accounted for by Keystone Reptile Tanners, Inc.; none passed through the treasury of Keystone Leather Company.

Neither, therefore, by any contractual obligation nor by actual receipt of any assets or proceeds thereof, is Keystone Leather Company under a duty to account.

Only upon defendant Keystone Reptile Tanners, Inc. is there such an obligation.

Although Keystone Leather Company rested its case upon the fundamental position that it was not legally bound to account, and it did not press on appeal any question in regard to specific items of surcharge imposed by the court below, it must be said that there is no apparent justification for the learned court's interpretation of the agreement of July 26, 1928, that Keystone Leather Company obligated itself to purchase the assigned merchandise at the prices fixed by the inventory and was therefore liable for the difference between the inventory values and the proceeds realized in liquidation. Had it been the intention of the parties to impose such an obligation upon Keystone Leather Company, even laymen would have found little difficulty in expressing it, whereas the agreement is barren of any phraseology even remotely indicating such an understanding. The purpose evidently was to add to torpid assets liquid capital which had been lacking to Houlberg, to dispose of the merchandise, by processing and sale, to the best advantage, and meanwhile and thereafter to continue and develop the business of importing, tanning and selling skins in which the Houlberg companies had previously dealt. The object of the inventory was not to fix prices at which Keystone Leather Company was to purchase the merchandise, but to establish a record that would preclude any subsequent question between the parties as to the quantities, qualities and values of the assets assigned. It is inconceivable that over $100,000 of merchandise should be turned over to the new company without such an inventory being taken for the information of all concerned, or even that the books of the new corporation could have been opened without it.

Plaintiff's appeal is directed principally to a credit item in the account for the cost of finishing and re-coloring some of the skins, plaintiff claiming that the mer-

chandise should have been sold in the condition in which it was when turned over to the liquidating company. This contention is without merit, as the court below properly held. Indeed, if it had not been intended to process the merchandise, there would have been no apparent need for Houlberg, as far as the liquidation was concerned, to seek a large amount of new capital, since that would not have been necessary merely for a sale of the stock in its existing condition. Plaintiff's second assignment of error is dismissed.

During the course of the liquidation Keystone Reptile Tanners, Inc. turned over several thousand dollars' worth of merchandise to a stockholder of Reptile Tanning Company, Inc. in order to dissuade him from continuing an obstructive policy which he had pursued in connection with the proceedings. As against the rights of creditors this transaction was unjustified, and the court should have so ruled. Plaintiff's first assignment of error, dealing with this subject, is accordingly sustained as against defendant Keystone Reptile Tanners, Inc.

The decree of the court below imposing a surcharge upon defendant Keystone Leather Company is reversed; costs to be paid by plaintiff and defendant Keystone Reptile Tanners, Inc.